### FIERMAN v. SEWARD NAT. BANK OF NEW YORK.

Circuit Court of Appeals, Second Circuit.
January 3, 1930.

No. 97.

Willcox, Swiger & Chambers, of New York City (Arlen G. Swiger, of New York City, Frederic L. Clark, and Andrew R. Mc-Cown, both of Philadelphia, Pa., Leo Oppenheimer and Milton P. Kupfer, both of New York City, of counsel), for appellant.

David W. Kahn, of New York City, for appellee.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Circuit Judge (after stating the facts as above). ▮ It is elementary that the Pennsylvania bankruptcy court had jurisdiction to collect and distribute the estate of the Pennsylvania bankrupt, the Hardwood Company. When the bankrupt's property was sold free of liens, the liens upon the property became rights against the substituted proceeds of sale, and claimants to this fund were obliged to assert their rights by applying to the court in whose custody it was. See In re Rochford, 124 F. 182 (C. C. A. 8); In re Kohl-Hepp Brick Co., 176 F. 340 (C. C. A. 2); Murphy v. John Hofman Co., 211 U. S. 562, 29 S. Ct. 154, 53 L. Ed. 327. Hence the bank, claiming ownership of the bonds, very properly intervened in the Pennsylvania proceedings, at first to prevent the destruction of its lien by the proposed sale, and later to reach the substituted fund. Indeed, no other course was open to it, if it wished to realize anything upon its collateral security.

▮ But Fierman, as McConnell's trustee in bankruptcy, was under no similar necessity. He had the alternatives of claiming the Pennsylvania fund, or of refraining from intervention in the Pennsylvania proceedings and bringing a preference suit against the bank in any court of competent jurisdiction. If he claimed the fund, he would necessarily submit for decision by the Pennsylvania referee his claim that McConnell's transfer of the note and mortgage bonds to the bank was a voidable preference, for only by establishing this would he show any title in himself. See In re Valecia Condensed Milk Co., 233 F. 173 (D. C. Wis.); Logan v. Haynes, 11 F.(2d) 369 (C. C. A. 8). On the other hand, if he did not intervene, a decision awarding the fund to the bank would decide nothing as to the preference, and would affect not at all his right to maintain a preference suit against the bank. In such a suit, if he proved the preference, he would get a decree for the value of the bonds, not for the physical return of them. The bonds themselves would have been converted into the fund which the Pennsylvania court would distribute to the bank.

The legal principles above stated are not seriously disputed, if we correctly understand the contentions of the parties. At least, it is conceded that, if Fierman submitted his claim of title to the bonds or to the substituted fund to the jurisdiction of the Pennsylvania court, that court had power to determine the conflicting rights of the parties, and no injunction should have issued. The real dispute is whether or not he did so submit himself. The District Court found that he did not.

▮ In our opinion, that conclusion is too doubtful to justify the granting of an injunction pendente lite upon affidavits. Indeed, to our minds the proof strongly points to the opposite conclusion. When Fierman applied to Referee Davis to enjoin the bank from selling the bonds, he swore that he was represented before the Pennsylvania referee by his counsel, Mr. Kahn, and that the referee had set a hearing for July 11th, to determine who is the owner of the bonds, and who is entitled to be heard upon the application to sell the bankrupt's property free of liens, and he added that all the rights of the bank would be litigated in that proceeding, and that the referee would there determine whether the "bonds are the property of the Seward National Bank or are the property of the other claimants, including your petitioner." While this affidavit would not itself amount to an appearance in the Pennsylvania proceedings, it tends strongly to support an inference that, when Mr. Kahn appeared and took active part in the hearings before the Pennsylvania referee, both before July 11th and subsequently, he was in fact appearing as Fierman's representative, and litigating on his behalf the issues which Fierman said would be there litigated.

The affidavit of McClean Stock alleges that during the taking of testimony before the referee Mr. Kahn stated that he was attorney for Fierman as trustee in bankruptcy of McConnell. What testimony was taken and what issues were litigated before Referee Kurtz the record on appeal does not clearly show. We do not find as a fact that complainant Fierman did submit to the jurisdic-

tion of the Pennsylvania bankruptcy court. We hold merely that under the proofs offered no injunction should have been granted pendente lite, on the ground that he had not submitted.

The decision of that question we leave for the trial of the New York preference suit, where the bank can plead the Pennsylvania proceedings as res judicata and all the facts can be shown. If the bank proves that the decision in the Pennsylvania proceedings was made after complainant Fierman had made a general appearance, or had otherwise submitted his rights to determination by Referee Kurtz, that decision will control. If, on the other hand, he did not so submit, then the Pennsylvania decision did not adjudicate the rights of the bank and Fierman, as between themselves.

We have not overlooked the contention of Fierman that the Pennsylvania litigation and the New York preference suit relate to different subject-matters, because the former has to do with the distribution of the proceeds of the Hardwood Company's real estate, and the latter has to do with title to the note transferred by McConnell, and accompanied by the mortgage bonds as collateral. The contention is fallacious. When the preference suit was started, the sale of the mortgaged property free of liens had already taken place. The mortgage bonds as such had ceased to exist, as completely as if the mortgage had been foreclosed. For the rights formerly evidenced by the bonds, there had been substituted a right to obtain the proceeds of sale upon application to the court having custody of the fund. That right belonged to the one who formerly owned the bonds. U. S. Trust Co. v. Gordon, 216 F. 929 (C. C. A. 6). The preference suit, in so far as it sought any relief with respect to the collateral securing the note, presented the issue whether Fierman or the bank was to be considered the owner of the bonds after McConnell's transfer. The identical issue was presented to the Pennsylvania court, provided Fierman appeared therein and claimed to be owner of the bonds or to be entitled to the substituted fund realized from the sale.

On November 5th, after the New York preference suit had been started, Fierman, filed with the Pennsylvania referee a claim to the proceeds of the sale, coupling with it an assertion that he did so without waiving the right to have his title determined in the New York suit. Whether such an assertion is effective to preclude his claim from operating as a general appearance (assuming he had not previously appeared), and to pre-

vent the court having custody of the fund from passing upon the title he asserts, we need not now decide. Neither party has briefed this point, and we mention it merely by way of caution, to indicate that it has not been passed upon.

From the foregoing expression of our views, it is apparent that the injunction was improvidently issued, and that so much of the decree as adjudged that any determination of the defendant's claim by the Pennsylvania court should be without prejudice to a determination of the issues in the preference suit was erroneous.

The denial of the defendant's motion for an injunction is affirmed, and the remainder of the decree is reversed, with costs to the appellant.