**In the Matter of R & L ENGINEERING CO., Inc., a California corporation, Bankrupt.**

**No. 94066.**

United States District Court
S. D. California,
Central Division.

March 25, 1960.

Lloyd Tevis, Pasadena, and Turpit, Drennen & Thompson, Whittier, Cal., for petitioner on review, Frank J. Levins.

Flaxman & Coleman and Sigfried Levitt, Los Angeles, Cal., for trustee.

Gordon M. Emanuel, Beverly Hills, Cal., for bankrupt.

BYRNE, District Judge.

R & L Engineering Co. Inc. borrowed $6,700 from A. C. Ted Schwarz and as security for that indebtedness pledged to Schwarz 2¾ shares of the common stock of Slater Development Corporation. Thereafter Schwarz re-pledged these shares to Frank J. Levins, who is the petitioner on review herein, to secure a loan made by Levins to Schwarz for $3,-000. As re-pledgee Levins has retained physical possession of the stock. Both debts became due and in default. Subsequent to these events, on December 22,

1958, after an involuntary petition in bankruptcy was filed on December 5th, R & L Engineering Co. Inc. was adjudicated a bankrupt. Levins did not file a claim in the bankruptcy proceeding. Schwarz, the first pledgee, did.

The trustee filed a petition in the bankruptcy proceedings in which he recited that he had been authorized to institute a plenary proceeding in the State Superior Court, and that if he was successful therein, he would need the stock to make tender thereof to one of the defendants in that action. He also alleged that it would be impractical and not in the best interest of the estate for him "at this time" to redeem the stock from Levins for the sum of $3,000, "which sum is due to Mr. Levins". He prayed for a temporary restraining order precluding Levins from selling, encumbering, hypothecating or in any way disposing of the stock in question. The referee issued the restraining order as prayed, stating in his conclusions of law that "Section 2(a) 15 [11 U.S.C.A. § 11, sub. a(15)] gives the bankruptcy court jurisdiction to enter any order regarding said stock." He also relied upon Section 57, sub. h of the Bankruptcy Act, 11 U.S.C. A. § 93, sub. h, as conferring authority to issue the restraining order.

The investiture of power under § 2, sub. a(15) is broad, viz, to "make such orders * * * as may be necessary for the enforcement of the provisions of this Act * * *". Of course that power is not unlimited, and limitations relevant herein have been spelled out by Judge Learned Hand in In re Hudson River Navigation Corporation, 2 Cir., 1932, 57 F.2d 175, 176. In that case the bankrupt had pledged certain securities to a bank as securities for loans made prior to bankruptcy. The trustee applied for an injunction to prevent the sale of these securities, alleging that such a sale would result in great sacrifice of the collateral, which was amply sufficient to protect the loans; that some of the securities were essential to the conduct of the business, and that a reorganization was in contemplation at which all of the properties would be sold. The injunction was denied.

Judge Hand held that the bankruptcy court had no jurisdiction to stay the proposed sale or to interfere with the dominion of the pledgee over the property:

"* * * * The pledgee, having taken possession of the documents, supposes himself for just that reason to be the sole judge of his necessities, and lends on that understanding. So long as he keeps within the terms of the agreement, he need not concern himself with the pledgor's fate, or that of his creditors, who must stand in his shoes."

The instant case differs from the Hudson River case in that here there are two pledges and, while it is true that the petitioner-repledgee has not filed a claim in bankruptcy, it is also true that the first pledgee, petitioner's pledgor, has done so. Petitioner argues that, notwithstanding that difference, the Hudson River rationale is applicable here and that as repledgee, petitioner has done nothing to bring himself within the jurisdiction of the court. His debtor is in default, and he wishes simply to sell the pledged security in accordance with the pledge agreement. Respondent's position is that the existence of the middleman pledgee removes this case from the protective umbrella of the Hudson River doctrine.

A pledge is "a security interest in a chattel or in an intangible represented by an indispensable instrument, the interest being created by a bailment for the purpose of securing the payment of a debt or the performance of some other duty." Restatement, Security, § 1, or, more simply, "a deposit of personal property by way of security for the performance of another act", California Civil Code § 2986. Although the interest of the pledgee is transferable, Fiedler v. Allen, 117 Cal.App. 622, 4 P.2d 292, the legal ramifications of a re-pledge are not clearly spelled out in the body of existing law on the subject.

■ The crux of pledge theory is that the interest of the pledgee is "by way of security" for the debt. The lien of the pledgee on the pledged property attaches by virtue of the debt. "The pledge by definition is a security interest. The pledge and the claim it secures are inseparable", comment on § 29(2) in the Restatement of Security. In the instant case the interest of the first pledgee, Schwarz, is a tenuous one. It was not possible for him to have assigned his interest in the pledged stock without also having assigned his interest in the debt, the pledge and the debt secured by it being inseparable, Easton v. Hodges, C. C., 1883, 18 F. 677 (dictum) Van Eman v. Stanchfield, 1867, 13 Minn. 75, Gil. 70, and see Parks, "The Rights of a Pledgor on Transfer of a Pledge", in 6 Minnesota Law Review 173. The general principles of the law of assignments are operative here. The second pledgee, Levins, may now look to the first pledgor for collection of his debt. Assuming proper notification, the first pledgor, R & L Co., may not make payment to Schwarz without first making payment to Levins. Schwarz does not "drop out of the picture", as petitioner urged in oral argument, but he is in the background of the picture. He has a right of redemption against Levins, and he has a right, upon a proper sale of the stock, to the proceeds, up to his debt, left over after satisfaction of the debt of the re-pledgee.

■ On these facts the doctrine of the Hudson River case is applicable. The re-pledgee is the "sole judge of his necessities", and if his judgment dictates a sale of the stock in accordance with the pledge agreement, the bankruptcy court ought not to be allowed to prevent the sale. Without more, then, § 2, sub. a(15) does not confer the power to issue the disputed order.

■ The referee however also relied upon the application of § 57, sub. h of the Bankruptcy Act. This section provides for the evaluation of security held by secured creditors of the bankrupt, under the supervision of the court. The amount arrived at by that evaluation is then credited on the claim and a dividend is paid only on the unpaid balance; that is the "core of this provision", see Collier, Bankruptcy, vol. 3 at page 256. The scheme of § 57, sub. h, then, is to assure that care is taken in the valuation of the security and that the secured creditor shares only to the extent of his deficiency.

Petitioner argues that Schwarz by the act of repledging the security, has assigned his entire interest in the claim, has not the power to file a claim in the bankruptcy court, and that therefore § 57, sub. h may not be invoked.

■ It is true that where there has been an effective, complete assignment of a claim prior to bankruptcy, the assignor is considered as having only a technical title; he is not allowed to prove his claim; it is provable by the assignee, see Feder v. John Engelhorn & Sons, 2 Cir., 1952, 202 F.2d 411, 3 Collier § 57.06, 2 Remington on Bankruptcy § 737.

The instant situation is assimilable to an assignment. By the act of re-pledge, Schwarz has made an assignment, albeit a conditional assignment, of the first pledgor's debt, and normal rules of assignment are operative. An important distinction, however, must be made. What transpired was not simply an assignment, but an assignment by way of security. There was not an entire assignment of the claim, and Schwarz retained the right to redeem the pledge, and the right to receive the balance after a proper sale of the pledged securities by the re-pledgee.

■ Although tenuous, these rights make of Schwarz a creditor, entitling him to be a petitioner in an involuntary petition for bankruptcy. If Schwarz is entitled to prove his claim, then it would follow that the valuation provisions of § 57, sub. h ought to be applicable to avert the possibility that the policy of the Act be thwarted. Schwarz ought to be entitled only to a distributive share after deduction of the value of the security.

This view seems to be supported by authority:

"A claim may be assigned before bankruptcy as security. The creditor's only right may be to receive the balance after deducting the amount due the assignee. The right to receive the balance is a credit right and it renders the assignor a creditor entitled to be a petitioner in an involuntary petition or in a reorganization petition." 2 Remington, Bankruptcy § 898.

In re 69th & Crandon Bldg. Corporation, 7 Cir., 1938, 97 F.2d 392, 395, certiorari denied Easthom-Melvin Co. v. Hoffman, 305 U.S. 629, 59 S.Ct. 93, 83 L.Ed. 403, an assignor of a claim against a bankrupt was a petitioner in a reorganization proceeding:

"The answer alleges that the claim of Geyser for $195,675 was assigned to Easthom-Melvin Company to secure a note upon which there is now due $18,800, and that the only right of Geyser is to receive the balance after deducting the amount of the note. This of course, is a credit right enforceable against the debtor if there be a balance, and it renders Geyser a creditor in any event."

Thus the distinction between an ordinary assignment of a claim and an assignment by way of security, in this instance a re-pledge, is crucial. Schwarz' interest, though now secondary to Levins', entitles him to be a claimant in the bankruptcy proceedings. That being true, the court, though it may not prevent the sale of the stock, has jurisdiction under § 57, sub. h, for the purposes of evaluation of the pledged security before sale.

An examination of the disputed restraining order reveals that it is not limited to the scope authorized by § 57, sub. h. The restraint is imposed "until further order of court". The record discloses that what is contemplated is the termination of proceedings recently instituted in the Superior Court for the rescission of a sale of a ranch. The trustee's position is that he will want the stock, if successful in the state suit, for tender to effect the rescission. It appears that the restraint, for these purposes, may be effective for perhaps two years or more.

If § 2, sub. a(15), standing alone, were sufficient to support a restraining order against a pledgee, then perhaps it would support an order for these purposes for an indefinite period of time, assuming the order to be equitable under the circumstances. In the instant case, however, the basis of the order is § 57, sub. h, and the limited purpose of § 57, sub. h is to control the valuation of the security for the protection of the unsecured creditors.

While it is true that no time limit is imposed for the valuation under the Act, and while it is desirable that considerable discretion be allowed the referee in the supervision of that valuation, it does not appear in this case that there is a need for so protracted a delay as contemplated by the disputed order. The record discloses no reason why more immediate measures may not be taken, under the specific provisions of § 57, sub. h, to value the stock.

It is conceivable that the stock may not properly be valued until after the state litigation has been completed, as the respondent has urged in oral argument. While that is conceivable, it is doubtful; and the referee has not specifically made such a finding. It is also apparent that no evidence was presented to support such a finding. The scope of the disputed order exceeds the power of the court under § 57, sub. h. If the referee finds that the issuance of an order for the valuation of the securities before sale is appropriate, it may be made. The case is remanded to the referee for further proceedings not inconsistent with the views expressed in this memorandum.

Counsel for the petitioner is directed to prepare, serve and lodge a formal order pursuant to Rule 7 of the rules of this court, West's Ann.Code.