## In re SWIFT et al.

### Ex parte WILCOX et al.

(District Court, D. Massachusetts. October 4, 1901.)

### No. 2,745.

BANKRUPTCY—RELINQUISHMENT OF LIEN THROUGH MISTAKE OF LAW—RIGHT TO REINSTATEMENT.

A creditor of a bankrupt sued him and garnished persons owing him within four months before the bankruptcy, and thereafter obtained judgment and collected the same from the garnishees, believing that the garnishment was valid. At that time both he and the garnishees knew

of the bankruptcy, and that the trustee claimed the money owing from the garnishees, and they required a bond of indemnity from the creditor. Thereafter a fund was received by the estate on which such creditor was entitled to a lien for the amount of his debt, but, in the belief that his debt had been discharged, he waived any claim to such fund. The trustee afterwards brought suit against the garnishees, who made demand on the creditor under his bond of indemnity, and he settled the suit by paying over to the trustee the amount he had received under the garnishment. *Held*, that such payment should be treated in equity as a restitution of money belonging to the bankrupt's estate, and the creditor reinstated in his lien on the fund in the hands of the trustee, as having been relinquished through a mistake of law; his good faith in the transaction being conceded.

In Bankruptcy. On petition of Wilcox and others, creditors, to be allowed to prove his claim in the matter of the bankruptcy of Frederick Swift and others, and for reinstatement of a lien.

Ropes, Gray & Gorham, for creditor.

Freedom Hutchinson, trustee, pro se.

LOWELL, District Judge. Wilcox, a creditor of the bankrupt, sued him and garnished Post & Flagg less than four months before the filing of the petition. Thereafter he proceeded to judgment, took out execution, and collected from Post & Flagg the amount due him from the bankrupt, in the belief that it had been duly recovered under a valid garnishment, and that there had thus been effected a full settlement of the judgment rendered against the bankrupt. The judgment was entered satisfied. At that time Wilcox knew that bankruptcy proceedings were pending, and that Swift's trustee claimed the debt owed by Post & Flagg. As Post & Flagg had been informed of the bankruptcy, they took a bond from Wilcox to indemnify them in case of loss. Still later Wilcox was notified that the bankrupt's seat in the New York Stock Exchange had been sold. The rules of the exchange gave Wilcox a lien upon the proceeds of the seat for the amount of the bankrupt's debt to him, and he was invited to prove his claim against the bankrupt in the manner prescribed by the rules. To this notice he replied that he had already made a settlement with the bankrupt, and that he relinquished whatever claim he had against the bankrupt's membership. The trustee brought suit against Post & Flagg to recover their debt to the bankrupt's estate. As the garnishment made by Wilcox was void under section 67 of the bankrupt act, the payment by Post & Flagg to Wilcox did not avail them to resist the trustee's suit. Wilcox was called upon under his bond of indemnity, and agreed with the trustee that the trustee's suit against Post & Flagg should be settled by the payment by Wilcox of the money due the trustee from Post & Flagg. The payment was made, and the trustee received and applied the same in full settlement of his suit. Wilcox now seeks to prove against the bankrupt's estate, and to reinstate his lien upon the proceeds of the bankrupt's seat in the stock exchange, which have been paid over to the trustee.

While none of the cases cited in argument are exactly like the case at bar, yet the latter does not differ substantially from cases in which it has been held that a creditor who has relinquished a security

by mistake, either of law or fact, should be reinstated in his security by the court of bankruptcy, if the estate will be left by the reinstatement no worse off than if the security had been originally retained. In re Condon, 9 Ch. App. 609; Oil Co. v. Hawkins, 20 C. C. A. 468, 74 Fed. 395, 33 L. R. A. 739; Bank v. McKey, 42 C. C. A. 583, 102 Fed. 662. In Re Condon, it is true, the money was paid directly to the trustee by the party held to be equitably entitled, and was recovered directly from the trustee as paid under a mistake of law. Here the transaction was not quite so simple. Wilcox released to the trustee his lien on the seat in the stock exchange, believing that his claim against the bankrupt had been settled under the attachment. This belief was the mistake of law. He released his security, believing that he was no longer the bankrupt's creditor. Proof of a debt as unsecured ordinarily releases any security for the debt held by the creditor making proof. If a secured creditor believes he is unsecured, and proves accordingly, thus releasing his security, even though his mistake be caused by pretty stupid ignorance of the law, yet it is held that his proof can be recalled, and his release thereby avoided, "when all parties can be placed in the same situation they would have been in if the error had not occurred." In re Parkes, 10 N. B. R. 82, 83, Fed. Cas. No. 10,754. If the release of a security can be avoided because the release was caused by a mistaken belief that the debt was unsecured (Oil Co. v. Hawkins, 20 C. C. A. 468, 74 Fed. 395, 33 L. R. A. 739), there should be possibility of avoidance where the release was caused by a mistaken belief that the debt secured had ceased to exist.

The trustee argued that, as he did not and could not recover from Wilcox the money paid Wilcox by Post & Flagg, the bankrupt's debt to Wilcox remains satisfied by the satisfaction obtained of the judgment recovered against the bankrupt. He contended that the bond given by Wilcox to Post & Flagg is not to be taken as part of the transaction, but as something with which the trustee has no concern. But it is not clear that the trustee was without remedy directly against Wilcox, and, moreover, considering the bond of indemnity in connection with the negotiations between Wilcox and the trustee, and with the settlement they both entered into, it appears to me that equity will treat the payment to the trustee by Wilcox as a restitution made by Wilcox of money belonging to the bankrupt's estate which had come into Wilcox's hands, thus reviving Wilcox's claim. In the Condon Case, above cited, the creditor took the proceeds of goods of the bankrupt sold on execution. These proceeds he subsequently paid over to the trustee, believing himself bound in law to do so. If his belief had been correct, can it be supposed that his claim against the bankrupt would have been satisfied by the levy of execution? It was suggested that in this case Wilcox sought to secure an unfair advantage by realizing under his garnishment. If he did so,—if he sought to evade the bankrupt act,—he cannot now appeal to the equitable consideration of this court; but the agreed facts state expressly that he received payment from Post & Flagg in the belief that the money had been duly recovered from them under a valid attachment. He knew of the bank-

ruptcy, but he may not have known when it took place.  For many purposes the adjudication may give notice to all the world, but it does not give such notice as to make a person who fails to govern his conduct by it guilty of so willful an attack upon the law that he should be deprived of a security to which he is otherwise equitably entitled.   That ignorance of the law excuses no one is not a maxim of universal application.   Against some mistakes of law a court of bankruptcy will relieve.   Actual knowledge that bankruptcy proceedings were pending, and constructive knowledge of their date, of all the language of the act, and of the correct interpretation thereof, will not turn an otherwise innocent mistake of law into a guilty one.   Again, Wilcox knew that the trustee claimed to recover from Post & Flagg, but, as he also believed that his own attachment was valid, he was under a mistake of law or of fact.   That the mistake was unreasonable, that he ought to have known better, even if true, does not appear to me material, so long as he acted in good faith, as the agreed facts declare.

It was urged further that Wilcox cannot now get the benefit of his lien, because that lien can be established only according to the rules of the stock exchange, out of whose hands the money had passed.   But the rules of the stock exchange do not establish any method of formal proof as a condition precedent to the existence of the lien.   They establish the lien generally, and then provide for the ascertainment of the amount of the debt.   As that amount is found in the agreed statement of facts, Wilcox should be permitted to prove therefor, and to receive satisfaction out of the proceeds of the seat, as far as those proceeds will go.

The judgment of the referee is modified accordingly, but the creditor will recover no costs of this proceeding.   He must pay the costs of the suit against Post & Flagg, taxed as between solicitor and client.